IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Carl Maxwell, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:05-141 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| DAK Americas and Mundy Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**I.     BACKGROUND**

This breach of employment contract action is before the court on defendants' motions for summary judgment. Plaintiff Carl Maxwell began employment at DuPont's Cooper River site in 1977. Throughout his tenure he served as a mechanical technician. Defendant DAK Americas ("DAK") assumed ownership of the plant in 2001. Defendant Mundy Corporation ("Mundy") is a primary DAK contractor providing in-house maintenance support. After plaintiff was diagnosed with fibromialgia, he voluntarily retired effective May 14, 2004. Prior to his retirement, plaintiff had conversations with DAK Maintenance Supervisor Carl Jordan, DAK Maintenance Manager Juan Maldonado, and Mundy Site Maintenance and Operations Manager Kenny DeLong about plaintiff's desire to return to work as a Mundy employee in DAK's maintenance shop. During his conversation with DeLong, plaintiff indicated he would like to come back and work in the shop after his retirement, "probably to around March [2005], and then I said something like give or take a month, but I kind of set a date later like the end of March." (Pl.'s dep. at 35.) Plaintiff contends DeLong agreed, stating "if you want to work longer, you can . . . [i]f you want to work less, you can." DeLong recalls his response as "if

that's the length of time . . . that's good. If it's before then, that's good. If it was after that, that's good, because we're driven by the plant." (DeLong dep. at 12.) No part of this conversation was written down. When plaintiff began work for Mundy in May 2004, he signed an employment application that stated:

> I agree that my employment is not for a definite time but may be terminated at the will of the company.
> . . . .
> I understand that nothing contained in this application or in the granting of an interview creates a contract between any Mundy Company and myself for either employment or for the providing of any benefits. No promises regarding employment have been made to me and I understand that no such promise or guarantee is binding upon any Mundy Company unless made in writing by the president of such company. . . . I understand that I have a right to terminate my employment at any time, and my employer has the same right.

Plaintiff did not have an agreement with Mundy limiting the amount of overtime he would have to work. (Pl.'s dep. at 63.) During the last week of plaintiff's employment with Mundy, the plant experienced maintenance problems that required overtime work. Jordan told plaintiff to work overtime; plaintiff said "I'll work as long as I can," and that he was worn out. Jordan then ordered plaintiff to stay, to which plaintiff responded, "I can't do that . . . I'll stay as long as I can, I don't mean to sound disrespectful, but I just can't stay here half the night." (Pl.'s dep. at 41-42.) Later that evening, plaintiff went to Jordan's office to "see if he was ok." Jordan was not here, but Maldonado was in a nearby office. Plaintiff described the conversation to Maldonado, and Maldonado asked plaintiff if he was ready to retire again. Plaintiff stated that he thought he told them he wanted to stay until March, and noted,

> I guess if I wanted to leave now, I really could. You know, it wouldn't be a problem. But . . . y'all need the help and I'm not going to turn

2

>
> down the money as long as you want me to work. I'm not going to work another five years, but, you know, we agreed to March and I intend on living up to my end of the bargain.
>         . . . [Y]'all probably need me more than I do you. [Y]'all need the help. Y'all don't have the experience, and like I said, I intend on staying through March.

(Pl.'s dep. at 43-44.) The following Monday (August 23, 2004), DeLong told plaintiff he was terminated for insubordination and failure to work overtime. After plaintiff protested because he actually did work the overtime, DeLong tore up the discipline notice, but told plaintiff he was still terminated because of the "you need me more than I need you" comment to Maldonado. (Pl.'s dep. at 51-52.) Plaintiff then initiated this action, alleging breach of contract and promissory estoppel against Mundy, and tortuous inference with contract against DAK. Both defendants have filed motions for summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Evidence should be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a "mere scintilla" of evidence will not preclude summary judgment. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly . . . find a verdict for the party" resisting summary judgment. Id. at 251.

**III.     DISCUSSION**

    **a.     Breach of Contract**

The doctrine of at-will employment provides that employment for an indefinite term is "terminable by either the employee or the employer for any reason or for no reason without incurring liability for wrongful discharge." <u>Davis v. Orangeburg-Calhoun Law Enforcement Comm'n</u>, 344 S.C. 240, 246, 542 S.C. 755, 758 (2001). Generally speaking, the termination of an at-will employee does not give rise to a breach of contract claim. However, "an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the contract." <u>Id</u>. "The at-will status of an employee may be altered by an oral contract of definite employment." <u>Prescott v. Farmers Tel. Coop</u>., 335 S.C. 330, 336, 516 S.E.2d 923, 923 (1999). The oral modification must be "sufficiently explicit to constitute an offer" to take the employment out of the at-will status. <u>Id.</u>

Viewing the evidence in the light most favorable to plaintiff, the dialogue underlying the claim does not offer a definite period of employment. The statement "kind of . . . a date later like the end of March" does not specify a definite date of employment.[1] Plaintiff's hedging and vague estimation ("probably to around March . . . give or take a month") is not a definite time frame. Even plaintiff's own recitation of

---

[1] Plaintiff's affidavit states that he believed he would work for Mundy until March 2005 and would not be terminated prior to that time (Pl.'s aff. ¶¶ 11, 12.) This belief does not effect the relevant analysis, which is whether the statements constituted an offer of definite employment. Under plaintiff's own recollection of his conversation with DeLong, that standard is not met. Plaintiff's subjective belief as to the conversation's meaning is not the determining factor.

4

DeLong's response ("if you want to work longer, you can . . . [i]f you want to work less, you can") undermines his characterization of a definite offer. No employee could "reasonably expect [this] statement to limit the employer's right to terminate him." Davis, 344 S.C. at 250, 542 S.C. at 760 (quoting Montogmery County Hosp. District v. Brown, 965 S.W.2d 501, 502 (Tex. 1998)). As such, this court cannot conclude that the statements represent a definite offer of employment. Mundy's motion for summary judgment on the breach of contract claim is proper.

Even if the statements constitute a contract, there is no evidence of a breach. Plaintiff concedes that even under the alleged contract, Mundy retained the power to terminate him for cause. Therefore, plaintiff contends he would work until March 2005 unless Mundy terminated him for cause or he retired. The record contains no guidelines for "cause" under the purported oral contract; the statements at issue do not discuss the terms of his employment or provisions for dismissal. The only reference in the record to "cause" for termination is DeLong's description of Mundy's procedures for termination. According to DeLong,

> all the new employees that come to work with the Mundy Company are on a six-month probationary period, and, basically, that is a policy with the Mundy Companies for all new employees that they have reserved; that if there is a safety violation or workmanship issues or any intolerable offense or major offense that is committed on-site, that that employee may be terminated at any time during that six-month probation period.

(DeLong dep. at 19.) This provision is inconsistent with the employee application signed by plaintiff on May 17, 2004. Plaintiff was within the probationary period when he was terminated.

Even assuming plaintiff could only be fired for cause, plaintiff's recitation of his

5

conversation with Maldonado justifies Mundy's decision to terminate him. DAK is Mundy's primary customer, so Mundy management is sensitive to Maldonado's concerns. Maldonado considered plaintiff's "y'all probably need me more than I do you" comment and complaints about overtime to be "detrimental to modernization" and conveyed his concerns to Mundy management. Specifically, Maldonado told Jordan "I don't need a contractor on this site or in any of the shops that . . . feels that he can choose what to work on and what not to work on . . . to convey that kind of attitude towards me." (Maldonado dep. at 22.). Maldonado then told DeLong that he did not want plaintiff working in any of the DAK facilities at the Cooper River site. DeLong then made a reasonable business decision to honor his customer's request. (Maldonado dep. at 23.) Angering a primary customer is this particular type of business relationship is certainly a major concern; as such, Mundy's termination cannot be said to be unreasonable or unjustified.

  **b.**  **Estoppel**

  Promissory estoppel requires "(1) the presence of an unambiguous promise; (2) that the promisee reasonably relied upon the promise; (3) the reliance was expected; and (4) the promisee was injured as a result of reliance upon the promise." <u>Davis v. Greenwood School District</u>, 365 S.C. 629, 634, 620 S.E.2d 65, 68 (2005). As noted, the dialogue at issue does not express an unambiguous promise to employ plaintiff until a date certain. It is also unlikely that plaintiff's reliance on this statement as a guarantee of employment was reasonable. As such, plaintiff's promissory estoppel claim must fail.

  **c.**  **Tortuous Inference with Contract**

Tortuous interference with contract requires the "existence of a valid contract, the wrongdoer's knowledge thereof, his intentional procurement of the breach, the absense of justification, and resulting damages." Camp v. Springs Mortgage Corp., 307 S.C. 283, 285, 414 S.E.2d 784, 785-86 (1991).  The dialogue at issue did not constitute a valid contract.  Moreover, plaintiff has admitted to statements that apparently justify the insubordination accusation.  Therefore, summary judgment as to this claim is proper.

## IV.   CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that defendant Mundy's motion for summary judgment as to the breach of contract and promissary estoppel claims be **GRANTED**; and that defendant DAK's motion for summary judgment as to the tortuous interference with contract claim be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 13, 2005**
**Charleston, South Carolina**